**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **WEE CARE NANNY AGENCY, LLC,**<br>**Plaintiff,**<br>**-against-**<br>**WEECARE, Inc.,**<br>**Defendants.** | **Civil Action No. 1:23-cv-2117**<br>**DEMAND FOR JURY TRIAL** |

## VERIFIED COMPLAINT

Plaintiff Wee Care Nanny Agency, LLC ("Plaintiff' or "WEE CARE NANNY") brings this action against Defendant WeeCare, Inc. ("Defendant" or "WEECARE") and alleges as follows:

## NATURE OF ACTION

1. This is an action for: (1) willful trademark infringement in violation of the Lanham Act, 15 U.S.C. § 1114(1) and New York common law; and (2) unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a) and New York common law.

2. This action arises from Defendant's infringement of Plaintiff's federally registered WEE CARE NANNY trademark by using WEECARE for domestic household staffing services, namely the placement of nannies and babysitters for childcare and educators for children in the home, the identical (and related) services protected by Plaintiff's federal registered trademark. Such conduct causes harm to Plaintiff including in the State of New York and this District, and through this action, Plaintiff seeks damages, an order compelling the disgorgement of profits obtained by Defendant through its infringement, and/or entry of a temporary restraining order and preliminary injunctive relief arising from Defendant's conduct.

## THE PARTIES

3. Plaintiff is a Connecticut corporation with its principal place of business at 21 Fifth Street, Stamford, Connecticut 06905-5225.

4. Defendant is a Delaware corporation with its principal place of business at 4223 Glencoe Avenue, Suite C125, Marina Del Rey, California 90292.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over Plaintiff's federal claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) and (b). This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

6. This Court has personal jurisdiction over Defendant because Defendant has used the infringing WEECARE mark for products and services in U.S. commerce, including in this jurisdiction. Specifically, Defendant has purposefully directed business activities at the State of New York, including, on information and belief, use of the infringing WEECARE mark in connection with products and services for nanny and baby sitter domestic household staffing services and related informational services in New York, which constitute at least a minimum number of contacts with the State of New York such that the maintenance of this suit in this Court does not offend traditional notions of fair play and substantial justice.

7. Venue is proper in this Court because Defendant is subject to the personal jurisdiction of this Court, and because a substantial part of the events giving rise to Plaintiff's claims and causing Plaintiff's products and services injuries occurred within this Judicial District.

## FACTUAL BACKGROUND

***Plaintiff's Incontestable WEE CARE NANNY Mark***

8. Plaintiff is a leader in the placement of nannies and babysitters for childcare and educators for children in the home in the New York Metropolitan area and surrounding regions. For more than twenty (20) years, Plaintiff has operated as a trusted full-service household staffing agency that places nannies and babysitters for childcare and educators for children in the home. Plaintiff's nanny and babysitter domestic placement services under the name WEE CARE NANNY are well-known in the New York Metropolitan region where it operates and its network of customer referrals have garnered industry-wide recognition amongst non-profit organizations, businesses and individuals.

9. Plaintiff's extensive advertising, marketing and promotion efforts have generated a significant amount of good will and consumer recognition in Plaintiff's WEE CARE NANNY trademark.

10. The WEE CARE NANNY trademark has been in use in commerce in connection with Plaintiff's full-service household staffing agency that places nannies and babysitters for childcare and educators for children in the home since at least as early as April 1, 2002. Since that time, Plaintiff has continuously used the mark WEE CARE NANNY, and consumers have come to rely upon and trust the WEE CARE NANNY brand as the source of only the highest quality and safety for placing nannies and babysitters for childcare and educators for children in the home.

11. Today, WEE CARE NANNY-branded products and services are offered and sold online and by telephone in the New York Metropolitan region, with a substantial amount of the business concentrated in the five boroughs of New York City and Connecticut, and Plaintiff has derived substantial revenue from the sale of WEE CARE NANNY-branded products and services.

12. Plaintiff also uses the WEE CARE NANNY mark in advertising, marketing, and promotional materials in the New York Metropolitan region through various media. The success

of Plaintiff's full-service household staffing agency that places nannies and babysitters for domestic childcare and educators for children in the home is due, in part, to its extensive promotion and advertising for the WEE CARE NANNY mark.

13. In addition to its strong common law rights in the WEE CARE NANNY trademark, Plaintiff owns the following U.S. Trademark Registration No. 4,907,824, registered March 1, 2016, for the standard character mark WEE CARE NANNY, which is legally and validly registered on the Principal Register of the United States Patent and Trademark Office ("USPTO"):

| Mark | U.S. Reg. No. | Goods and Services | Status |
|---|---|---|---|
| WEE CARE NANNY | 4,907,824 | Int. Cl. 35 (U.S. Cls. 100, 101 and 102): employment agency services, namely, filling the temporary and permanent staffing needs of businesses; employment agency services, namely, temporary and permanent placement of healthcare professionals; employment agency services, namely, temporary placement of child care providers; employment counseling and recruiting; employment counseling in the field(s) of household domestic staffing; employment staffing in the field of household domestics, namely, nannies, babysitters, baby nurses, companions, housekeepers, personal assistants, domestic couples, house managers, valets and cooks; nanny placement agencies; nanny referral agency services; providing an employer with candidates or potential employees to fill temporary, contract and permanent positions; referrals in the field of household domestic staffing; temporary employment agencies | Registered |

14. Copies of the Certificate of Registration and USPTO Trademark Status and Document Retrieval ("TSDR") printout for the WEE CARE NANNY U.S. Registration No. 4,907,824 are attached as **Exhibit A**. This registered mark together with Plaintiff's extensive common law rights in the WEE CARE NANNY mark are hereinafter referred to collectively as the "WEE CARE NANNY Mark."

15. Plaintiff's federal registration for the WEE CARE NANNY Mark is incontestable under 15 U.S.C. § 1065. Pursuant to 15 U.S.C. § 1115(b), Plaintiff's incontestable registration is conclusive evidence of the validity of the WEE CARE NANNY Mark, Plaintiff's ownership of the mark, and Plaintiff's exclusive right to use the WEE CARE NANNY Mark in commerce in connection with the identified services.

16. As a result of Plaintiff's extensive use and advertising of products and services bearing the WEE CARE NANNY Mark, consumers have come to identify Plaintiff – and only Plaintiff – as the source of Plaintiff's trusted full-service household staffing agency that places nannies and babysitters for childcare and educators for children in the home.

17. The WEE CARE NANNY Mark symbolizes an exceptional level of quality, reliability, trustworthiness and safety, which are crucial qualities in the employment agency industry for placing nannies and babysitters for domestic childcare and educators for children in the home, and the WEE CARE NANNY Mark is an asset of incalculable value and an identifier of Plaintiff's goods and services.

18. The WEE CARE NANNY Mark is distinctive and well-known for Plaintiff's goods and services, and is therefore entitled to a broad scope of protection.

***Defendant WEECARE's Intentional Acts Have Caused Immediate And Continuous Irreparable Harm To Plaintiff WEE CARE NANNY***

19. Defendant's actions are willful and intentional to trade on the reputation and goodwill of Plaintiff and the WEE CARE NANNY Mark. Defendant had actual knowledge of Plaintiff's ownership of the WEE CARE NANNY Mark for the identified services and elected to use the mark WEECARE for the identical, similar and related services anyway.

20. In particular, Defendant owns U.S. trademark Registration No. 5,730,827 of April 23, 2019 for WEECARE for "downloadable mobile applications for communication, video and photograph sharing between daycare service providers and parents or family members" in Class 9 and "software as a service (SAAS) services featuring software for daycare management and operations" in Class 42. These goods and services being focused on institutional daycare service providers and customers, not domestic household services. **Exhibit B** (U.S. Registration No. 5,730,827 for WEECARE). During prosecution of Defendant's registration for WEECARE in the United States Patent & Trademark Office ("USPTO"), Plaintiff's WEE CARE NANNY Mark was directly cited by the Examining Attorney against Defendant's WEECARE mark in a first Office Action dated January 22, 2018. The Examining Attorney contended that Defendant's services were related to those of Plaintiff because "consulting firms also offer employment agency services". In response to this citation, Defendant asserted that their mark WEECARE is "not used as a source identifier for childcare services, or employee management services." **Exhibit C** (Page 7 of Response to Office Action filed on July 19, 2018).

21. Thus, Defendant knew or should have known that Plaintiff was and is the owner of the WEE CARE NANNY Mark for services including those that provide nanny and babysitter staffing for childcare in the home at least as early as January 22, 2018, when the first Office Action issued refusing the application. Despite knowledge of Plaintiff's WEE CARE NANNY Mark, and

its assertion to the USPTO that Defendant's WEECARE mark is not used as a source identifier for childcare services, Defendant has more recently deliberately expanded its services to the placement of nannies and babysitters for childcare and educators for children in the home, willfully infringing upon Plaintiff's rights in and to the WEE CARE NANNY Mark.

22. Furthermore, counsel for Plaintiff sent a demand letter of November 10, 2022 (**Exhibit D)** to Ms. Jessica Chang, CEO of Defendant WEECARE, providing notice of Plaintiff's incontestable, federally registered WEE CARE NANNY trademark for nanny and/or babysitter domestic household staffing services and requesting that Defendant WEECARE immediately cease and desist their infringing use of the WEECARE mark for the placement of nannies and babysitters for childcare and educators for children in the home. Defendant never responded to the demand letter. Nevertheless, subsequent to this letter, Plaintiff's counsel and Plaintiff have attempted, without success, to negotiate the immediate and permanent cease and desist of Defendant's use of the WEECARE mark in connection with household staffing services. Notwithstanding the foregoing notice and demand to cease and desist, Defendant WEECARE's infringing use of the WEECARE mark has continued.

23. Defendant has no legitimate reason or good faith basis to use the WEECARE mark in connection with the placement of nannies and babysitters for childcare and educators for children in the home, and their use of the WEECARE mark is intended to trade off and profit from the goodwill and reputation of Plaintiff and its WEE CARE NANNY Mark, thereby causing immediate and continuing irreparable harm to Plaintiff.

24. Specifically, Plaintiff and Defendant have the same marketing and advertising channels through their respective internet websites: www.weecarenanny.com (Plaintiff) (pertinent web pages attached as **Exhibit E)** and www.weecare.co (Defendant) (pertinent web pages attached as **Exhibit F).** Plaintiff and Defendant market to the same customers: families, nannies,

babysitters and educators (*see* https://weecare.co/safety-and-education). As a result of Defendant's use of the WEECARE mark, there has already been substantial confusion in the market by families and caregivers alike confusing Defendant's nanny and babysitter household childcare services with Plaintiff's nanny and babysitter household childcare services. **Exhibit G** (sixteen representative examples of at least 40 instances of actual confusion). Moreover, actual confusion is increased because Plaintiff is often referred to as "WEE CARE," including in Google reviews. Families and caregivers often refer to Plaintiff as "WEE CARE" when calling or emailing. Also, Plaintiff is promoted organically as "WEE CARE" by pleased past and current clients on social media sites like Facebook mom's groups.

25. There is a significant difference between the nanny and babysitter household childcare services provided by Plaintiff and Defendant that is vitally important regarding the quality and safety of the services they provide. As explained in more detail below through a comparison of Plaintiff's and Defendant's services as advertised on their respective websites, Plaintiff selects nannies, babysitters and educators for families only after an extensive background check, including criminal background check, of each and every nanny, babysitter or educator before the nanny, babysitter or educator is directly connected to trial or work with each family. In contrast, Defendant directly connects families with nannies, babysitters and educators through their website regardless of whether a nanny, babysitter or educator has been subject to a background check, including a criminal background check. Moreover, a substantial number of nannies and babysitters who Defendant encourages families to directly connect with have not been subject to a background check, including a criminal background check.

26. Defendant knows that background checks of nannies and babysitters for childcare in the home for infants (0-2) and toddlers (2-5 years and 5+ years) are vitally important, because

it references these checks on its website, and deceptively suggests that it performs these checks on "every candidate," when in fact a background check has not been performed on substantially all of the nannies and babysitters listed on its website (**Exhibit F** at pp. 15-17):

> "**How does WeeCare use background checks?**
>
> We manually review every candidate whose history reveals information that may disqualify them from providing care. If the results of the background check confirm that a prospective provider does not meet our safety standards, the individual is immediately removed and banned from our platform. We look at a variety of charges when determining eligibility for our platform. Any of the following criminal convictions will disqualify a prospective provider from joining the platform, and will result in a current provider's immediate termination from the platform, including:
>
> - Criminal Intent
> - Security Charges
> - Theft & Property
> - Drugs & Alcohol
> - Sexual Charges
> - Vehicles & Traffic
> - Fraud & Deception
> - Statutory Charges
> - Violence & Homicide
>
> In accordance with federal and state privacy laws, WeeCare is unable to share specific results from an individual's background check, however we encourage families to select care providers with the verified WeeCare badge that signifies they have passed a background check. Families are also welcome and encouraged to conduct additional background checks at their discretion."

27. However, Defendant only asks its nannies and babysitters "to submit a 5 min background check," and also advises nannies and babysitters: "You don't need to get a background check right away, however, your profile will not show up as verified. Nannies and sitters who complete background checks and are verified are 6x more likely to match with a family. We are happy to have you be part of our network. But note that in the future, a parent may request for you to get a background check." **Exhibit F** at p. 20.

28. Defendant also knows all of the nannies and babysitters available on its website for

selection by families are not background checked (**Exhibit F** at p. 16):

> "How do I know which providers are background checked?
>
> Background checked providers earn their verification badge . This badge appears next to their profile photo and on the provider's listing page."

29. A review of the nineteen page list of the nannies (10 per page for a total of 190) on Defendant's website in New York City and its boroughs shows that only 24 of the 190 nannies have the verification badge check mark and are allegedly background checked, the remaining 166 nannies that are available for selection by families for care of their infants and toddlers in that locality are not verified (and thus not background checked). **Exhibit F** at pp. 21-114.

30. A review of the seventy page list of babysitters (10 per page, except last page is 9, for a total of 699) on Defendant's website in New York City and its boroughs shows that only 61 of the 699 babysitters have the verification badge check mark and are allegedly background checked, the remaining 638 babysitters that are available for selection by families for care of their infants and toddlers in that locality are not verified (and thus not background checked). **Exhibit F** at pp. 115-463.

31. Families searching for a nanny or babysitter for their infant or toddler can directly choose and hire any of the nannies or babysitters, with or without a background check, listed on Defendant's website. Moreover, Defendant invites its registered nannies and babysitters, with and without a background check, to reach out directly to families in the New York Metropolitan area (**Exhibit F** at p. 465):

> "How do I meet families in my area?
>
> As a nanny, babysitter, or daycare provider using WeeCare, you'll be able to meet families once you've joined our platform. Once registered, you'll be able to connect with families in

your area who are looking for childcare with your specific skills and qualifications. Finally, you can also reach out to families in your area directly through our platform and introduce yourself and describe your experience and your availability."

32. In contrast to Defendant's inferior and unsafe nanny and babysitter domestic household service, while Plaintiff offers nannies and babysitters for Nanny Care, Temporary Care and Newborn Care Specialists, Plaintiff does not permit families to directly contact and select nannies and babysitters on their own through a list of nannies and babysitters. **Exhibit E** at pp. 1-9. But rather, based on a job description, Plaintiff carefully and extensively performs background checks, including a criminal background check, on each and every prospective caregiver before placing a nanny or babysitter with a family for childcare (**Exhibit E** at pp. 10-11): "Our Placement Managers literally go through scores of candidates to whittle the pool down to a select few experienced and dedicated child care providers (we reject over 93% of those that apply). As a brick and mortar agency, we personally meet and vet all candidates. We speak with and authenticate their past child care references. Additionally, we conduct some of the most stringent background checks in the industry." For the duration of the placement, Plaintiff follows-up with hiring families and placed nannies to provide ongoing support and guidance for any questions or issues that arise.

33. Notably, all nannies and babysitters have an extensive background check, including extensive criminal background check, before they are placed with families (**Exhibit E** at pp. 13-16):

"ALL CANDIDATES MUST BE:

At least 21-years of age

A US citizen or legally authorized to work in the U.S.

A nonsmoker in good health to meet the requirements of the position

ALL CANDIDATES MUST HAVE/PROVIDE:

At least two forms of valid identification. One form must be a state or federally issued photo ID

Proof of eligibility to work legally in the U.S.

Verifiable work references with names, addresses, contact numbers and timeframe employed

At least two years of recent professional nanny or domestic experience.

A willingness to make at least a one-year commitment (for permanent positions)

Written authorization for us to check work references, driving (DMV) records and conduct an extensive criminal background check

A valid U.S. driver's license (not required for all positions)"

34. The foregoing significant difference in the quality and safety of Plaintiff's nanny and babysitter domestic household services which extensively background checks, including their criminal backgrounds, each and every nanny and babysitter before placing them with a family and follows up post-placement, and Defendant's inferior and unsafe service which does not perform this critically important step before connecting each and every nanny and babysitter with a family, coupled with the confusion in the market regarding whether Plaintiff or Defendant is the source of such services, has caused immediate and continuous irreparable harm to the reputation and goodwill of Plaintiff's business.

35. Moreover, unfortunately Defendant's service is an invitation to a tragedy (harm to an infant or toddler) based on the misconduct of a nanny or babysitter that has been placed for domestic household babysitting services that has not been background checked, including criminally background checked. Anyone can apply for Defendant's service and be listed as a nanny or babysitter on Defendant's website with an embellished or fabricated background or

artificial past employment history as a nanny or babysitter.  While some of those job seekers are legitimate and well-intentioned, there is no filter for people with evil intentions, predators, or otherwise psychologically unstable people that could injure a child physically or mentally.  Should such a tragedy occur, the reputational damage could result in the closing of the nanny and babysitter domestic household service.  Lawmakers and regulators could take action to shut down the business or potentially the entire on-line nanny and baby sitter domestic childcare industry in at least the Metropolitan area.  Because of the confusion caused by Defendant's use of the infringing WEECARE mark, misconduct caused by a nanny or babysitter referred by Defendant's service could be wrongly attributed to Plaintiff's business, resulting in direct harm to Plaintiff or even its shutdown.  For example, Plaintiff could be wrongly confused with a potential childcare tragedy with a headline referencing a "nanny or babysitter from Wee Care" or a "Wee Care nanny or babysitter" was arrested for a crime. There are examples of where such horrific tragedies have been publicized to the detriment of a business, including closure or substantial loss of market share. **Exhibit H**.  In view of the extensive number of nannies and babysitters, who have not been background checked, including criminally background checked, that are listed on Defendant's website and invited to connect with families, immediate and irreparable injury will result to Plaintiff before a hearing in this action.

36. In addition, families can select a nanny or babysitter on Defendant WEECARE's website free of charge.  In contrast, Plaintiff charges an agency fee based on a percentage of the total gross annual compensation paid to a Nanny Care babysitter or Newborn Care Specialist or specific member (members pay a yearly fee of $249) and nonmember fees for Temporary Care babysitters depending on a number of factors, including length of time of service, holiday service, notice and emergency booking.  Families contemplating the hiring of a household caregiver are deceived by the free services of Defendant into believing that they should not have to pay an

agency or that an agency such as Plaintiff is just a middle man, seeking to profit without providing any real value. As a result, Defendant's placement of nannies and babysitters for childcare in the home without charging a fee for such services will cause immediate and irreparable harm to Plaintiff through an erosion in its fees charged for placing nannies and babysitters. Moreover, as a result of the ongoing confusion in the marketplace, each potential loss (known and unknown) of connecting with a hiring family or qualified nanny, babysitter or educator has and will continue to cost Plaintiff thousands of dollars in lost revenue. An example of a recent loss is a healthcare company BeneLynk headquartered in Milford, Connecticut in close proximity to Plaintiff's business location. BeneLynk announced its hiring of WeeCare "the largest childcare network in the United States, with the mission to provide access to affordable, high-quality childcare to all families" (https://twitter.com/BeneLynk/status/1599914627798032384/photo/1). **Exhibit I.**

37. Defendant's conduct causes damage and irreparable injury to Plaintiff and to its goodwill and business reputation. As a direct and proximate result of Defendant's infringement of the WEE CARE NANNY Mark, Plaintiff has suffered immediate irreparable harm, and will continue to suffer, unless Defendant is temporarily restrained and preliminarily and permanently enjoined by the Court, irreparable harm, damages and economic injury.

**COUNT I – FEDERAL TRADEMARK INFRINGEMENT**
**15 U.S.C. § 1114(1)**

38. Defendant's conduct is in violation of 15 U.S.C. § 1114(1). Plaintiff incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

39. Plaintiff owns exclusive rights in U.S. Registration No. 4,907,824 for the WEE CARE NANNY Mark.

40. Defendant WEECARE has knowledge of Plaintiff's exclusive rights in the WEE CARE NANNY Mark for the placement of nannies and babysitters for childcare and educators for

children in the home.

41. Without Plaintiff's authorization or consent, Defendant, as alleged herein, used and/or continues to use the nearly identical WEECARE mark in connection with the placement of nannies and babysitters for childcare and educators for children in the home for which Plaintiff owns registered rights.

42. Defendant knew or should have known it was not authorized to use the WEECARE mark for the placement of nannies and babysitters for childcare and educators for children in the home as of at least January 2018.

43. Defendant's use of the WEECARE mark, as alleged herein, is likely to cause confusion, mistake, or deception as to the source, sponsorship, or approval of Defendant's goods and services by Plaintiff. The consuming public and the trade are likely to believe that Defendant's goods and services sold under the WEECARE mark are licensed, sponsored or approved by Plaintiff, or are in some way connected with or related to Plaintiff, all to the damage and detriment of Plaintiff's reputation and goodwill, and in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

44. Defendant's willful acts have occurred in interstate commerce and have caused, and unless restrained by this Court, will continue to cause, serious, immediate and continuing irreparable injury to Plaintiff, for which Defendant has no adequate remedy at law.

**COUNT II – FEDERAL UNFAIR COMPETITION**
**15 U.S.C. § 1125(a)**

45. Defendant's conduct is in violation of 15 U.S.C. § 1125(a). Plaintiff incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

46. Defendant's unauthorized and infringing use of the WEECARE mark, as alleged herein, constitutes use of a false designation of origin and false or misleading representation in

interstate commerce, which wrongly and falsely designates, describes, and represents the origin of Defendant's goods and services as being connected with Plaintiff, and is likely to cause confusion, or to cause mistake, or to deceive as to Defendant's affiliation, connection, or association with Plaintiff, or as to the origin, sponsorship, or approval of Defendant's goods and services by Plaintiff in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

47. These acts have occurred in interstate commerce and have caused, and unless restrained by this Court, will continue to cause, serious and irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

**COUNT III – TRADEMARK INFRINGEMENT UNDER NEW YORK COMMON LAW**

48. Defendant's conduct constitutes trademark infringement in violation of New York common law. Plaintiff incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

49. By the acts described above, Defendant has engaged in trademark infringement in violation of the common law of the State of New York.

50. Defendant's acts have caused and will continue to cause, unless restrained by this Court, serious immediate and continuing irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

**COUNT IV – UNFAIR COMPETITION UNDER NEW YORK COMMON LAW**

51. Defendant's conduct constitutes unfair competition in violation of New York common law. Plaintiff incorporates by reference the allegations in each of the preceding paragraphs as if fully set forth herein.

52. By the acts described above, Defendant has intentionally engaged in unfair competition in violation of the common law of the State of New York.

53. Defendant's acts have caused and will continue to cause, unless restrained by this

Court, serious and irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enter a judgment and order:

1. That Defendant has willfully violated Sections 32(1) and 43(a) of the Lanham Act;

2. That Defendant has engaged in trademark infringement and unfair competition in violation of New York common law;

3. That Defendant, and its officers, directors, agents, servants, employees, affiliates, successors, shareholders, assigns and attorneys, as well as all those in active concert or participation with them, be preliminarily and permanently enjoined and temporarily restrained from:

(a) Using the WEECARE mark or any variation, reproduction, counterfeit, copy, or colorable imitation thereof in any manner in connection with the sale, offering for sale, distribution, or advertising of any goods or services in connection with the placement of nannies and babysitters for childcare and educators for children in the home in the United States;

(b) Doing any other act or thing calculated or likely to induce or cause confusion or the mistaken belief that Defendant is in any way affiliated, connected, or associated with Plaintiff or its goods or services; and

(c) Injuring Plaintiff's business reputation and the goodwill associated with the WEE CARE NANNY Mark, and from otherwise unfairly competing with Plaintiff's products and services in any manner whatsoever;

4. That, because of Defendant's willful actions and pursuant to 15 U.S.C. § 1117, and

New York common law and statutes, Plaintiff be awarded monetary relief in an amount to be fixed by the Court in its discretion as just, including:

(a) All profits received by Defendant from revenues of any kind made as a result of its infringement, and all damages sustained by Plaintiff as a result of Defendant's infringement, and that such profits and damages be trebled; and,

(b) The costs of the action;

5. That pursuant to 15 U.S.C. § 1116, Defendant be directed to file with the Court and serve on Plaintiff within thirty (30) days after issuance of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

6. That Plaintiff shall have such other and further relief as this Court may consider necessary to prevent or restrain infringement of Plaintiff's WEE CARE NANNY Mark by Defendant; and

7. That Plaintiff shall have such other and further relief as this Court may deem just.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable in this action.

Dated: March 13, 2023

Respectfully submitted,

*/s/ Tony Pezzano*

Tony V. Pezzano (NY Bar # 2315547)
Matthew D. Asbell
Chintan A. Desai
OFFIT KURMAN, PA
590 Madison Avenue
6th Floor
New York, NY 10022
Telephone: (212) 545-1900
Facsimile: (212) 545-1656
*Tony.Pezzano@offitkurman.com*
*Matthew.Asbell@offitkurman.com*
*Chintan.Desai@offitkurman.com*

## VERIFICATION

Marc Lenes, being duly sworn, deposes and says:

I am the founder and owner of Plaintiff Wee Care Nanny Agency, LLC in the above-entitled action. I have read the foregoing Complaint and know the contents thereof. The same are true to my knowledge, except as to matters therein stated to be alleged on information and belief and as to those matters I believe them to be true.

Marc Lenes

[Signature]

Sworn to before me this 10th day of March 2023

Simone Douglas.

Notary Public

4893-6167-4582, v. 1

SIMONE DOUGLAS
Notary Public
Connecticut
My Commission Expires Mar 31, 2025