

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/30/2023

2049 CENTURY PARK EAS[T]
T 310.229.9900   F 310.22[__]

May 22, 2023

t 310.229.0408
f 310.229.9901
SSBrooks@Venable.com

**VIA CM/ECF**
The Honorable Analisa Torres
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:  Emergency Letter Motion to Stay Preliminary Injunction Pending Defendant
WeeCare, Inc.'s Appeal to the Second Circuit
**Wee Care Nanny Agency, LLC v. WeeCare, Inc., No. 1:23-cv-02117-AT**

Dear Judge Torres,

Pursuant to Federal Rule of Civil Procedure 62(d) and Local Rule 7.1(d), Defendant WeeCare, Inc. ("WeeCare") respectfully submits this letter motion to requesting a stay of the preliminary injunction entered by this Court's April 27, 2023 order pending a determination in WeeCare's appeal to the Second Circuit, filed on May 2, 2023.

WeeCare believes it is likely to prevail because 1) Plaintiff Wee Care Nanny Agency, LLC ("Plaintiff") failed as a matter of law to demonstrate that it will suffer imminent and irreparable harm without the entry of a preliminary injunction; 2) Plaintiff failed as a matter of law to show it is likely to succeed on the merits of its trademark infringement claims; and 3) Plaintiff failed the show that the public interest and balance of the hardships weighed in favor of entering such an extraordinary remedy.

This Court's grant of Plaintiff's motion for preliminary injunction was in error at least because Second Circuit precedent indicates that delay alone negates allegations of irreparable harm. Here, it is undisputed that Plaintiff knew about WeeCare's use of its registered WEECARE mark since August 2022, at the latest, and is deemed to have at least constructive notice of the WEECARE registration as of its issuance in 2019. Further, Plaintiff made only speculative allegations of potential reputational harm, coupled with de minimis, anecdotal evidence of confusion. In addition, Plaintiff failed to adequately show that the *Polaroid* factors weighed in its favor, such that it was likely to succeed on the merits of its claim. On these facts, Plaintiff has not shown it is entitled to such extreme relief.



The Honorable Analisa Torres
May 22, 2023
Page 2

On the other hand, WeeCare, and the public, will suffer irreparable harm absent a stay of this injunction pending appeal. WeeCare is the largest network of small childcare providers and provides a valuable service to the public by making childcare more affordable and accessible. More than 100,000 families use WeeCare's services each month. Thus, WeeCare and the public's substantial injury outweighs any speculative harm alleged by Plaintiff.

Accordingly, WeeCare respectfully requests that the Court stay the preliminary injunction entered by its Order, pending a decision from the Second Circuit on appeal.

## I.   THE COURT SHOULD STAY THE PRELIMINARY INJUNCTION PENDING DEFENDANT'S APPEAL

In determining whether to grant a stay pending appeal, Courts in the Second Circuit consider: 1) whether the movant has demonstrated a substantial possibility, although less than a likelihood, of success on appeal; 2) whether the movant will suffer irreparable injury absent a stay; 3) whether the non-moving party will suffer substantial injury if a stay is issued; and 4) the public interests that may be affected. *LaRouche v. Kezer*, 20 F.3d 68, 72 (2d Cir. 1994). For the reasons set forth below, these factors favor WeeCare.

### A.   WeeCare Has Demonstrated A Substantial Possibility That It Will Prevail on Appeal

#### 1.   Plaintiff Cannot and Has Not Shown Irreparable Harm

WeeCare is likely to prevail in its appeal because 1) Plaintiff did not make the requisite showing of imminent and irreparable injury necessary to secure a preliminary injunction; 2) Plaintiff cannot establish a likelihood of success on the merits; and 3) Plaintiff did not show that the balance of the hardships and the public interest weigh in favor of granting an injunction. Although WeeCare can show a likelihood of success, WeeCare does not need to meet that high standard in order for this Court to enter a stay. WeeCare need only demonstrate a substantial possibility of success on appeal for this Court to grant the requested relief.

First, WeeCare should prevail in its appeal because Plaintiff did not and cannot make the requisite showing of imminent and irreparable harm. "[I]nability to prove irreparable injury is in itself sufficient grounds for reversing the grant of the preliminary injunction." *Dopp v. Franklin Nat'l Bank*, 461 F.2d 873, 881-82 (2d Cir. 1972). To satisfy the irreparable harm requirement, the Plaintiff "must demonstrate that absent a preliminary injunction they will suffer 'an injury that is neither remote nor speculative, but actual and imminent,' and one that cannot be remedied 'if a court waits until the end of trial to resolve the harm.'" *Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 66 (2d Cir. 2007) (citing *Freedom Holdings, Inc. v. Spitzer*, 408 F.3d 112, 114

(2d Cir. 2005)); *see also Winter v. Natural Resources Defense Council, Inc.,* 607 F.3d 7, 23 (2008) ("Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.").

Second Circuit courts have held that delay in filing for injunctive relief, on its own, negates any finding of irreparable harm. *See Citibank, N.A. v. Citytrust*, 756 F.2d 273, 276-77 (2d Cir. 1985) (vacating a preliminary injunction, reasoning that plaintiff failed to establish irreparable injury where it delayed "more than ten weeks" in seeking injunctive relief); *see also Weight Watchers Int'l v. Luigino's, Inc.*, 423 F.3d 137, 144 (2d Cir. 2005) ("We have found delays of as little as ten weeks sufficient to defeat the presumption of irreparable harm that is essential to the issuance of a preliminary injunction.").

Here, it is undisputed that Plaintiff significantly delayed in filing for a preliminary injunction. In its November 10, 2022 letter to WeeCare, Plaintiff implied that it knew about WeeCare's trademark application for the WEECARE Mark as early as November 2018 when the application published for opposition. (Dkt. 38 at ¶ 3, Ex. 1). In September 2021, WeeCare expanded the services it offers on its software platform (Dkt. 39 at ¶8). Plaintiff did not object to either action at the time. Finally, Plaintiff admits it has been aware of WeeCare's use of its WEECARE mark since August 2022 when it received communications from allegedly confused customers– nearly 7 months prior to filing for a preliminary injunction. (Dkt. 62; Tr. 17:7- 17:8). Plaintiff's 7-month delay in seeking an injunction far exceeds this court's well-established two-month threshold negating any finding of irreparable harm. On this basis alone, the preliminary injunction should be vacated on appeal.

In addition, Plaintiff did not address the *Citybank, N.A. v. Citytrust*, *Algood Casters, Ltd. V. Caster Concepts, Inc.*, and *Gidatex S.r.L. v. Campaniello Imports, Ltd.* cases cited by WeeCare in its opposition. Instead, in its Reply brief, Plaintiff cites to *Marks Organization, Inc. v. Joles*, 784 F. Supp. 2d. 322, 333 (SDNY 2011). (Dkt. 42 at 12). But even the court in Marks Organization, Inc. acknowledged that "[t]he Second Circuit has found delays of "as little as ten weeks" sufficient to defeat the presumption of irreparable harm." *Id.* In light of Plaintiff's delay in seeking an injunction, the preliminary injunction should be vacated on appeal. *See Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995) (vacating a preliminary injunction, reasoning that the district court did not apply the correct standard with respect to irreparable harm given plaintiff's "manifest delay in bringing the action and in making the motion.").

Moreover, Plaintiff offered only highly speculative, unsubstantiated claims about possible harm to its reputation. Plaintiff claims that its reputation could be harmed by WeeCare's practice of allowing nannies and babysitters that are not background checked to make profiles on its platform. Plaintiff has repeatedly suggested that "misconduct caused by a nanny or babysitter



The Honorable Analisa Torres
May 22, 2023
Page 4

referred by Defendant's service could be wrongfully attributed to Plaintiff's business." (Dkt 18 at 12) (emphasis added); *see also* (Dkt. 42 at 11). "For example, Plaintiff could be wrongly confused with a potential childcare tragedy. . ." (Dkt. 18 at 12) (emphasis added). Plaintiff makes reference to an incident involving Care.com in many of its filings – an incident which has nothing to do with WeeCare or its services – to bolster its unsubstantiated claims about the safety of WeeCare's service. (Dkt. 42 at 15). Plaintiff's claims of reputational harm are the kind of speculative injury that cannot support a finding of irreparable harm. S*ee USA Network v. Jones Intercable, Inc.,* 704 F. Supp. 488, 491 (S.D.N.Y. 1989) (reasoning that a preliminary injunction "should not issue upon a plaintiff's imaginative, worst-case scenario of the consequences flowing from the defendant's alleged wrong but upon a concrete showing of imminent, irreparable injury."); *see also Tough Traveler, Ltd.,* 60 F.3d at 967 (vacating preliminary injunction where the district courts based its decision on a finding of "potential irreparable harm.").

To the extent that Plaintiff offers evidence of confused customers, that evidence not likely to result in the type of irreparable harm Plaintiff alleges and is therefore unpersuasive. In its Motion for Preliminary Injunction, Plaintiff cites to alleged instances of consumer confusion. (Dkt. 18 at 21); *see also* (Dkt. 17 at Ex. G). As explained in Defendant's Opposition and further in the below section, these cited instances are WeeCare's potential customers contacting Plaintiff, not instances in which Plaintiff's own customers are confused. Evidence of actual confusion that might support Plaintiff's claim "would involve purchasers or prospective purchasers of [Plaintiff's] products who believed that they were produced by or affiliated with [Defendant]." *Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 583 (2d Cir. 1991). If anything, then, Plaintiff's evidence shows that it was not harmed by any alleged consumer confusion but may have in fact benefited from it by capturing some of WeeCare's potential business.

Additionally, these communications are almost entirely from nannies and babysitters. Even if this evidence was probative of actual confusion, a confused nanny or babysitter trying to find employment is wholly unrelated to the reputational harm Plaintiff alleges it will sustain if families associate its fully background-checked services with those offered on WeeCare's free app. Therefore, Plaintiff's evidence of alleged confusion does not lend support to its allegations of irreparable harm.

For the foregoing reasons, WeeCare is likely to prevail on its appeal because Plaintiff has failed to show the requisite irreparable harm. Therefore, a stay of this injunction should be entered pending WeeCare's appeal.

## 2. The *Polaroid* Factors Weigh in Favor of Finding No Infringement

In addition, Plaintiff is likely to succeed on appeal because the Polaroid factors do not warrant a finding of infringement. At least five out of the eight *Polaroid* factors favor WeeCare's



The Honorable Analisa Torres
May 22, 2023
Page 5

position. The district court erred in balancing these factors and WeeCare can demonstrate a substantial possibility of prevailing on its appeal on these grounds.

As described in WeeCare's Opposition, the third and fourth *Polaroid* factors weigh in WeeCare's favor because Plaintiff and WeeCare do not market to the same customers. In its April 26th hearing, this Court noted that both "marks are being used in connection with an online service that connects families with childcare providers in the home." (Dkt. 62, Tr. 6:9-6:11). However, this characterization misinterprets the nature of WeeCare's services and the nature of Plaintiff's services. WeeCare does not connect families and nannies but instead provides an app for families, employers, and government entities to select childcare providers that meet their individual needs. (Dkt. 39 at ¶ 6). By contrast, Plaintiff operates a brick-and-mortar location and offers a form on its website; it does not offer any kind of app or other service whereby families can search for nannies or babysitters. Plaintiff offers placement services of nannies and babysitters to families alone, not to employers or government entities and not of daycare services of any sort. (Dkt. 18 at 1). Moreover, WeeCare operates on a nationwide basis, while Plaintiff is confined to just New York, New Jersey and Connecticut. (Dkt. 37 at 24); (Dkt. 18 at 4). These two factors therefore weigh against finding infringement.

Similarly, Plaintiff's alleged fifth factor evidence of actual confusion should not have been afforded great weight in determining whether it was entitled to a preliminary injunction. The instances of confusion cited by Plaintiff primarily involve WeeCare's potential customers, not Plaintiff's potential customer and such confusion could not form the basis of a trademark claim because it had no effect on the purchasing decisions of the relevant public. (Dkt. 17 at Ex. G); (Dkt. 44 at ¶ 6, Ex. D4). Misdirected communications do not necessarily show the kind of "confusion" required to sustain a claim for trademark infringement. *See Lang v. Retirement Living Publishing Co.*, 949 F.2d 576, 583 (2d Cir. 1991) (reasoning that misdirected phone calls were not necessarily indicative of actual confusion where "no evidence links the confusion evinced by the calls to any potential or actual effect on consumers' purchasing decisions."). Plaintiff presented no evidence that the misdirected emails and messages affected customer's purchasing decisions, for example, resulting in diverted sales. Additionally, "[e]vidence of only a small number of instances of actual confusion can be dismissed as inconsequential or de minimis." 4 McCarthy on Trademarks and Unfair Competition § 23:14 (5th ed.). During the April 26th hearing, this Court dismissed WeeCare's argument to this effect, noting that WeeCare "cites to case law applying to a summary judgment standard." (Dkt. 62, Tr. 7:3-7:5). However, there is significant case law in this Circuit supporting WeeCare's position. *See Inc. Publ'g Corp. v. Manhattan Magazine, Inc.*, 616 F. Supp. 370, 386 (S.D.N.Y. 1985) (denying a permanent injunction, reasoning that "[g]iven significant volume of sales over time, isolated instances of actual confusion may be disregarded as de minimis."); *see also C.L.A.S.S. Promotions, Inc. v. D.S. Magazines, Inc.*, 753 F.2d 14, 16 (2d Cir. 1985) (affirming a partial dismissal of trademark claims where the district court found that four alleged instances of actual confusion were de minimis).

The Honorable Analisa Torres
May 22, 2023
Page 6

The Court similarly failed to properly consider WeeCare's evidence with respect to the sixth *Polaroid* factor which requires a showing of bad faith. Although the Court stated that "Defendant was aware of plaintiff's registered mark before it started using its mark in connection with the offering of placement services for nannies and babysitters," it did not make a finding that WeeCare acted in bad faith in using its registered trademark in connection with its expanded services. (Dkt 62, Tr. 7:9-7:11). Prior knowledge of Plaintiff's registration does not necessarily weigh against WeeCare in considering this factor, "because adoption of a trademark with actual knowledge of another's prior registration of a very similar mark may be consistent with good faith." *Lang*, 949 F.2d at 584; *see also W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 575 (2d Cir. 1993) ("Gillette's knowledge of WWW's trademark does not necessarily give rise to an inference of bad faith"). Regardless, as noted above, WeeCare's expanded services do not include placement services, which is what Plaintiff offers.

With respect to the eighth *Polaroid* factor, the Court noted that "[t]here is no evidence before the Court suggesting that there is a significant difference in the price that consumer's pay for a childcare professional using plaintiff's versus defendant's services." (Dkt. 62, Tr. 8:5-8:8). However, there is substantial evidence in the record that suggests otherwise. Plaintiff charges a salary-based percentage fee to families who utilize its nanny-matchmaking services. (Dkt. 38 at ¶ 6, Ex. 3). WeeCare, as the court acknowledged during the hearing, "does not charge customers" for "the placement of nannies, babysitters, and child educators in the home." (Dkt. 62, Tr. 9:22-9:24). This price differential is significant. As such, Plaintiff's customers operate with a heightened level of care in selecting these expensive services. *See Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 90 (2d Cir. 2020) (quoting *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 627 F.2d 628, 631 (2d Cir. 1980)) ("[T]he greater the value of an article[,] the more careful the typical consumer can be expected to be."); *see also McGregor-Doniger Inc. v. Drizzle Inc.*, 599 F.2d 1126, 1137 (2d Cir. 1979) ("[T]he average purchaser of an automobile will no doubt devote more attention to examining different products and determining their manufacturer or source than will the average purchaser of a ball of twine.").

Therefore, WeeCare is likely to succeed on its appeal because Plaintiff failed to show it had a likelihood of success on the merits of its trademark claims. At the very least, there is a substantial possibility that WeeCare will succeed in its appeal. Thus, this Court should enter a stay pending appeal.

### 3.  The Balance of the Hardships and the Public Interest Weigh in WeeCare's Favor

WeeCare can also demonstrate a substantial possibility of prevailing on its appeal because this Court did not afford proper weight to the interests of WeeCare and the public it serves when balancing the hardships.

The Honorable Analisa Torres
May 22, 2023
Page 7

As discussed above, Plaintiff's alleged harm is purely speculative. Despite this, the Court, in its April 26th hearing, concluded that "[i]n the absence of an injunction, Plaintiff will be unable to control its reputation," citing to *New York City Triathlon, LLC v. New York City Triathlon Club, Inc.*, 705 F. Supp. 2d 305, 325 (S.D.N.Y. 2010). (Dkt. 62, Tr. 9:4-9:8). However, the facts of *New York City Triathlon* are vastly different than the facts at issue here. In that case, the court concluded that the balance of the hardships favored the plaintiff where the allegedly infringing party had a "clear intention . . . to capitalize on Plaintiff's reputation and goodwill." *Id*. at 319. There, plaintiff and defendant had a prior relationship, and the facts showed that "rather than pay a sponsorship fee to be affiliated with Plaintiff" the defendant decided "it would simply change its name to Plaintiff's name." *Id*. The defendant in *New York City Triathlon* also displayed a prior pattern of infringement. *Id*. Here, no such pattern or prior relationship exists. WeeCare did not change its name in order to capitalize on Plaintiff's goodwill. Instead, WeeCare adopted the mark from the outset of its business, in order to identify its daycare services application and employee benefit services. (Dkt. 39 at ¶ 3). In 2021, WeeCare expanded its services in good faith to offer related nannying and babysitting services, in light of the global pandemic. (Dkt. 39 at ¶8). WeeCare has therefore built significant goodwill around its brand, and the preliminary injunction thus jeopardizes that goodwill substantially.

This harm is compounded by the fact that more than 100,000 families use WeeCare's services each month. (Dkt. 39 at ¶ 5). As the largest network of small childcare providers in the United States, WeeCare serves an important public function, making childcare more affordable and accessible. (Dkt. 39 at ¶ 3). Thus, the balance of the hardships and the public interest weigh in WeeCare's favor. *See Two Hands IP LLC v. Two Hands Am., Inc.*, 563 F. Supp. 3d 290, 309 (S.D.N.Y. 2021) (holding that "the public interest would not be served by a preliminary injunction" where plaintiff could not show likelihood of confusion and compliance would require defendants to "incur considerable expense in redesigning their logo and references to it and in marketing any new design and name" and "lose whatever goodwill they have built up in their current design and name."). The preliminary injunction should therefore be vacated on appeal and this Court should issue a stay pending that decision. *See RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 125 (2d Cir. 2022) (vacating a preliminary injunction where the Second Circuit found that "balance of the hardships did not favor Plaintiff.").

**B.     WeeCare Will Suffer Irreparable Injury Without the Issuance of a Stay**

In the instant matter, the balance of the hardships and the public interest, strongly weigh in favor of staying the preliminary injunction. As discussed above, Plaintiff has not established irreparable harm. Plaintiff has not shown it has lost potential business. Plaintiff's evidence of actual confusion suggests that, in fact, it may have benefited from WeeCare's use of the WEECARE Mark by retaining some of WeeCare's potential customers. "[T]he speculative nature of the harm plaintiff alleges also weakens plaintiff's position" with respect to the balance of the



The Honorable Analisa Torres
May 22, 2023
Page 8

hardships. *A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 1997 U.S. Dist. LEXIS 688, at *9 (S.D.N.Y. Jan. 28, 1997).

On the other hand, WeeCare's injury is not speculative. It will suffer irreparable harm absent a stay. During the April 26th hearing, the Court minimized the burden of complying with the injunction to WeeCare, noting that "the injunction enforces the same terms contained in the TRO, and defendant has already substantially complied with the TRO." (Dkt. 62, Tr. 9:14-9:17). WeeCare complied with the Court's injunction by the May 2, 2023 deadline. Despite this, WeeCare is now faced with continuous attempts by Plaintiff to impermissibly expand the scope of the injunction. For example, immediately after the Court issued its Order, Plaintiff suddenly took the position that "use of the WEECARE mark for, on, and/or in connection with Defendant's in-home daycares . . . falls squarely within the plain language of the Court's injunction," even though Plaintiff had never taken issue with WeeCare's use of its mark in connection with such in-home daycare services at any other point in this litigation. (Dkt. 60 at 4). On May 4, 2023, the Court issued an order clarifying that "in-home daycares do not fall within the scope of the injunction." (Dkt. 61). More recently Plaintiff filed a Motion for Sanctions seeking to have WeeCare make changes to certain blog posts and social media posts, including those made by its corporate partners, that predate the TRO, despite the parties express agreement that "Defendant will remove "WeeCare" from its social media and blog posts made on or after the date of the TRO." (Dkt. 60 at 4); (Dkt. 68 at 11-14). Plaintiff's attempts to expand the scope of the injunction are not only without merit but also incredibly burdensome, costing WeeCare and this Court significant time and expense. Furthermore, with its latest Motion for Sanctions, Plaintiff is attempting to interfere with WeeCare's corporate business relationships, causing further harm to WeeCare. Thus, the harm to WeeCare absent a stay is not minimal, and balance of the hardships do not weigh in Plaintiff's favor. *See PLUS Prods. v. PLUS FOODS, INC.*, No. 80 Civ. 6224 (RWS), 1983 U.S. Dist. LEXIS 17733, at *4 (S.D.N.Y. Apr. 14, 1983) (granting a stay of preliminary injunction in part, noting that the significant cost of compliance would "involve irreparable injury" to the enjoined party).

The public interest also weighs in favor of granting a stay. During the April 26th hearing, this Court noted that the public "has a significant interest in not being misled as to the source of childcare services." (Dkt. 62, Tr. 10:2-10:6). But as discussed above, there is little indication of confusion on the record.



The Honorable Analisa Torres
May 22, 2023
Page 9

      In light of the foregoing, WeeCare respectfully asks that this Court stay its entry of a preliminary injunction pursuant to the April 27, 2023 Order, pending the outcome of WeeCare's appeal to the Second Circuit.

                Sincerely,

                Sarah S. Brooks
                *Counsel for Defendant Wee Care, Inc.*

cc: Counsel for Plaintiff (via CM/ECF)

The Court has reviewed the parties' letters dated May 23 and 24, 2023.  ECF Nos. 80-81.  Defendant's motion for a stay is DENIED.

SO ORDERED.

Dated: May 30, 2023
      New York, New York

ANALISA TORRES
United States District Judge